FILED
2/14/2020
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CONTINENTAL RESOURCES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> WYOTEX OIL COMPANY, <br><br> Defendant. | CV 17-148-BLG-TJC <br><br> **ORDER** |

      Continental Resources, Inc. ("Continental") brings this action against Wyotex Oil Company ("Wyotex") to recover costs associated with two oil and gas wells that Continental drilled in Richland County, Montana in 2014. Wyotex does not dispute that it elected to participate in the wells' development, but the parties disagree as to Wyotex's proportionate share of costs. Continental asserts claims for breach of contract and open account, as well as lien foreclosure.

      Presently before the Court are cross-motions for summary judgement filed by Wyotex (Doc. 30) and Continental (Doc. 39). The motions are fully briefed and ripe for the Court's review.

      Having considered the parties' submissions, the Court finds Wyotex's motion should be **DENIED**, and Continental's motion should be **GRANTED in part and DENIED in part**.

1

I.  **FACTUAL BACKGROUND**[1]

Continental is an Oklahoma corporation that drilled two wells in Richland County, Montana – Bauer 1-29 HR (the "Bauer Well") and Stanley 1-17 HR (the "Stanley Well"). Wyotex is a Wyoming corporation that owned mineral rights in the lands upon which the wells were situated. Louis A. Oswald, III ("Oswald") is the president and sole shareholder of Wyotex.

In October 2014, Continental sent Wyotex election to participate letters ("ETPs") and Authority for Expenditures ("AFEs") notifying it of Continental's plans to drill the wells, and to give it an opportunity to participate in the cost of the development the wells and share a greater portion of the potential revenue. The ETP for each well listed Wyotex's estimated gross working interests. The ETP for the Bauer Well listed Wyotex's interest as 0.0500000 (5%) and the ETP for the Stanley Well listed Wyotex's interest as 0.00141205 (0.14204%). The ETPs set forth the manner in which Wyotex was to indicate whether it wanted to participate. The ETPs stated: "Should you elect to participate in the drilling and completion of the "Bauer 1-29HR," please so indicate by executing both this letter and the enclosed AFE and returning one copy of each document to Continental no later

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

than thirty (30) days from receipt."[2] (Doc. 33-1 at 1.) The AFEs provided a blank space for Wyotex to write in the percentage of its working interest. Wyotex characterizes this entry as "the working interest percentage committed to the wells' development," while Continental characterizes the entry as "the percentage of working interests [Wyotex] had to commit to the Wells' development as of the date of execution of the AFEs." (Doc. 38 at 8-9.)

Wyotex signed the ETPs and AFEs on November 21, 2014. Prior to and after signing the ETPs and AFEs, Wyotex acquired several leases in the same tract that contained the wells. The leases raised Wyotex's working interests in the Bauer Well to over 30% and more than doubled its interests in the Stanley Well.

On December 4, 2014, Oswald emailed Wyotex's executed ETPs and AFEs to Dan Silhavey ("Silhavey") at Continental. On the ETPs, Wyotex elected to participate in both wells. On the AFEs, Wyotex entered a 5% working interest in the Bauer Well, and 0.141205% in the Stanley Well. In the email, however, Oswald stated:

> I have tried you several times on the phone but have never been able to get you in person. I have left you two messages saying that I was intending to participate in the above captioned wells in Richland County, MT *and have also let you know verbally that I have leased several of the other parties in both wells and intend to participate in those interests as well*.

---

[2] The ETP for the Stanley Well contained identical language, with the exception of identifying the well as the "Stanley 1-17HR". (Doc. 33-2 at 1.)

> Please forward me a complete copy of the title opinion for each well and a JOA for each as soon as you have the opportunity. Some of the leases I have taken have already been recorded in the county records and other are on their way to record.
>
> Please let me know if either well has spud yet and if not when you intend to spud each. *Election papers for each well are attached for the percentages that I owned of record a while back. Those percentages have obviously changed at this point.*

(Doc. 38-12 (emphasis added).)

The next day, December 5, 2014, Silhavey responded:

> I apologize for the delayed response, I was up in Montana at the hearings. *We will update the system with regards to your participation in the Bauer and Stanley wells.* If I have any other questions, I will be in contact.

(Doc. 38-13 (emphasis added).)

Oswald sent several subsequent emails to Continental in December 2014 advising that Wyotex had obtained additional leases and providing copies of the leases. For example, on December 13, 2014 Oswald stated, in part: "We have purchased several more leases in Section 29 to participate in that well that you have proposed there. They should all be back in the mail in the next few days and we will get copies of them to you and get them to the county records for recording." (Doc. 38-15.) On December 16, 2014, he said: "Attached is a lease from Pumpkin Buttes to WYOTEX Drilling Ventures, LLC on the S2 of Section 8 that covers interests in the Stanley 1-17HR well." (Doc. 38-16.) Finally, on December 18, 2014, Oswald wrote: "Attached are some of the leases that we have

4

in hand . . . I will get you recorded copies of all of this as soon as they are available." (Doc. 38-17.) In his emails, Oswald also repeatedly asked about a joint operating agreement and requested drilling reports and other documents.

Continental did not send Wyotex ETPs or AFEs for the later-acquired leases. Nevertheless, Continental asserts it was unnecessary for Wyotex to execute additional ETPs and AFEs in order to participate in the wells up to the full extent of the working interests it had acquired. According to the affidavit of Tejay Botchlet, Supervisor of Continental's Bakken North Division, it is not uncommon to accept a working interest owner's email or other written notice of intent to participate, without execution of a written election to participate form. (Doc. 38-1 at ¶ 8.)

On December 27, 2014, the Bauer Well reached total depth and a decision was made to abandon and plug the well. After the Bauer Well turned up dry, Oswald executed a Release of Oil and Gas Lease, surrendering several of the leases back to the lessors. Oswald attempted to back date the Release to December 1, 2014. Oswald acknowledges it is possible he backdated the Release to attempt to avoid potential liability for the additional interests Wyotex obtained from the leases.

On January 22, 2015, Continental emailed Wyotex pre-bills for the wells. The pre-bill for the Bauer Well showed Wyotex's working interest was

0.31554687% and the pre-bill for the Stanley Well showed 0.00367130%. On January 31, 2015, Joint Interest Invoices and Customer Statements were generated and mailed to Wyotex for both wells. The Joint Interest Invoices noted Wyotex's Equity Share was 31.554687 for the Bauer Well and 0.367130 for the Stanley Well. Continental continued to mail monthly invoices and statements to Wyotex reflecting the same Equity Shares and updated amounts Wyotex owed for the wells until July of 2015. Wyotex did not respond or object to the pre-bill statements or any of the Joint Interest Invoices until June 2015.

On June 22, 2015, Jerod Vance ("Vance) with Continental emailed Oswald and stated:

> Per our conversation last week the attached spreadsheet reflects net charges for the subject well on the WYOTEX account. As mentioned the Bauer table reflects net charges at .31554687 and .05, please remit payment immediately and provide backup for why you believe WYOTEX should be credited with a .05 working interest in the well. The account has been sent to Continental's Legal Department, your prompt attention is greatly appreciated.

(Doc. 38-25.)

Oswald responded via email the same day, and stated:

> Thank you for sending this along. I'll get it processed and paid for the percentages shown.

(*Id.*)

/ / /

/ / /

6

Later that night, Oswald sent another email to Vance, stating:

> To my knowledge, I only have the particulars on the January 2015 monthly invoice which does match the totals you set out for January.
>
> *I have reviewed it and will pay most of the 5% of the Bauer well and the 0.367130% share of the Stanley well charges contained therein.*
>
> I still do not have a copy of the DTO that I'm paying for in either of these wells which I have asked for repeatedly since the very beginning of this debacle. Should I deduct all of the legal and recording fees under item 5000010 from the invoices or can somebody finally send me a copy of these since I'm assuming you want me to pay for my share of their expenses. Furthermore, since we never got a Joint Operating Agreement in place, I'm not certain any of the overhead charges or the field office expenses are applicable. Part of the issue that I've had all along with the huge rush that Continental was in to get these wells drilled before any of the proper paperwork was in place or any of the non-operating working interest partners had a clue as to what was happening up in Richland County, ND.

(Doc. 38-27 (emphasis added).)

To date, Wyotex has not made any payments to Continental.

On November 5, 2015, Continental filed a Statement of Oil and Gas Well Lien in the District Court of Richland County, Montana. Continental contends Wyotex owes a total of $1,101,403.03 (exclusive of costs, interest and attorney's fees) for its proportionate share of costs for the wells.

## II. LEGAL STANDARD

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect

the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

Wyotex seeks summary judgment in its favor as to all of Continental's claims. Wyotex asserts that Continental may not recover costs beyond the percentages listed in the AFEs. It further contends that Continental's lien is invalid because it seeks to secure payment beyond that agreed to by the parties.

Continental, on the other hand, moves for summary judgment on its causes of action for breach of contract and open account, and seeks to enforce its lien. Continental asserts Wyotex's liability is not limited to the percentage interests listed in the ETPs and AFEs, and that it is liable for the full percentage of its leasehold interests.

### A. Breach of Contract

Wyotex does not dispute that it elected to participate in the wells, and that it is obligated to pay its proportionate share of costs based on the percentages specifically listed in the AFEs – 5% for the Bauer Well and 0.141204% for the Stanley Well. Wyotex also does not dispute that it has not paid any portion of these costs. Accordingly, Continental is entitled to partial summary judgment on its breach of contract claim for Wyotex's failure to pay 5% of the costs of the Bauer Well and 0.141205% of the Stanley Well.

The only issue to be decided, then, is whether Wyotex is only responsible to pay costs based on the percentages of participation listed in the AFEs, or whether the parties contracted for Wyotex to contribute based on the percentages of all of its leaseholds (31.554687% for the Bauer Well and 0.367130% for the Stanley Well).

Under Montana law, the essential elements of a contract are: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Mont. Code Ann. § 28-2-102. Consent consists of "an offer and an acceptance of that offer." *Keesum Partners v. Ferdig Oil Co., Inc.*, 816 P.2d 417, 421 (Mont. 1991).

The parties' dispute here centers on the issue of consent. Continental contends that the ETPs and AFEs originally sent to Wyotex constituted its initial

9

offer for Wyotex's participation in the wells. But Continental asserts that Wyotex's December 4, 2014 email, in which Oswald stated that Wyotex intended to participate in additional leaseholds it had acquired, constituted a counteroffer. Continental argues it accepted that counteroffer by advising Wyotex that it would "update the system with regard to [Wyotex's] participation" in the wells.

Wyotex disagrees. It argues that the only valid offer and acceptance was Continental's offer to participate in the ETPs and AFEs, and Wyotex's acceptance of the offer at the percentages of participation stated therein. It argues that the inclusion of information regarding its additional leaseholds in Oswald's December 4 email was merely a "manifestation of a willingness to enter a bargain, but one which lacks an essential term of assent."

Whether the parties have mutually consented to a contract is determined "by inquiring whether a reasonable person, based upon the objective manifestation of assent, and all the surrounding circumstances, would conclude that the parties intended to be bound by the contract." *Bitterroot Int'l Sys. v. W. Star Trucks, Inc.*, 153 P.3d 627, 635 (Mont. 2007). Application of the reasonable person standard generally presents a question of fact to be determined by the jury. *See e.g., Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868-69 (9th Cir. 2010) (explaining "summary judgment is generally an inappropriate way to decide questions of reasonableness"). The Montana Supreme Court has also repeatedly recognized

that "the extent and nature of the parties' consents . . . are questions of fact which must be first determined." *Amerimont, Inc. v. Fidelity Nat. Title Ins. Co.*, 210 P.3d 691, 693 (Mont. 2009).

In this case, while the basic historical facts are not in dispute, the inferences that can be drawn therefrom present issues of fact precluding summary judgment. "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

Wyotex argues, for example, that it did not execute any ETPs or AFEs with respect to the leasehold interests. Moreover, it points out that nothing on the face of the executed AFEs would increase Wyotex's participation percentages over the listed amounts. Wyotex contends that the fact it elected to participate in costs to the full extent of its preexisting 5% and 0.14204% working interests, does not mean it similarly elected to participate in its additional leasehold interests. Citing, *Northern Oil & Gas, Inc. v. Continental Res. Inc.*, 2017 WL 4287201, *7 (D. Mont. Sept. 27, 2017) (noting a leaseholder "has the right to elect whether to consent with respect to any lease it owns within the spacing unit, independent of the decision it makes regarding any other leases it may own").

Nevertheless, the determination of mutual consent is not based solely on the consent the parties express through their words, but also "the consent that the

11

parties imply through their conduct." *Bitterroot*, 153 P.3d at 635. Continental asserts that Wyotex's agreement to increase its percentages of participation is evident from Wyotex's subsequent conduct. Specifically, Continental points to Oswald's December 2014 emails, and Oswald's June 2015 statement that Wyotex would pay the bills showing the higher participation percentage.

The Court finds there is a question of fact regarding whether Oswald's December 2014 emails manifest mutual consent to an increased percentage of participation. On the one hand, Wyotex indicated an intent to participate in the additional leasehold interests. (*See* Doc. 38-12 ("I have leased several of the other parties in both wells and intend to participate in those interests as well.").) Wyotex also sent Continental copies of the additional leases so Continental could "update [its] records." (Doc. 38-14.) A reasonable fact finder might view these actions as indicating an intent to participate according to the interests reflected in the leases.

On the other hand, Wyotex did not specify what the percentages of participation would be. The possession of a lease does not necessarily equate to a commitment to participate in costs for that leasehold interest. *Northern Oil & Gas*, 2017 WL 4287201 at *7. Therefore, the fact Wyotex stated it wanted to participate in additional leasehold interests, does not necessarily establish it elected to participate in all of the interests acquired. Thus, reasonable minds could differ on

the inferences to be drawn from the facts surrounding Wyotex's December 2014 emails.

Moreover, even assuming Oswald's December 4, 2014 email constitutes a counteroffer, there are fact issues regarding whether Continental's response demonstrated mutual agreement on the percentage of participation. Oswald told Continental "[e]lection papers for each well are attached for the percentages that I owned of record a while back. Those percentages have obviously changed at this point." (Doc. 38-12.) Oswald did not specify, however, what the new "percentages" were. Continental responded that it would "update the system with regards to your participation in the Bauer and Stanley wells." (Doc. 38-13.) A reasonable juror could conclude Continental would update its system to reflect only Wyotex's participation based on the AFEs. Alternatively, a reasonable juror could find Continental's records would be updated to reflect Wyotex was participating in costs to the full extent of Wyotex's interests in the additional leases. These disputed issues preclude the Court from finding that there was mutual assent to all essential terms as a matter of law.

Continental asserts that Wyotex's agreement to participate at the higher percentages of costs can also be gleaned from its response to the billing statements. Wyotex was sent multiple billing invoices stating Wyotex's liability for the full extent of its working interests. Wyotex did not object, even stating at one point in

13

June 2015 that it would get the invoice for the larger percentages "processed and paid for the percentages shown." (Doc. 38-25.) Later that same day, however, Oswald stated that he had reviewed Continental's January 2015 monthly invoice and "will pay most of the 5% of the Bauer well and the 0.367130% share of the Stanley well." (Doc. 38-27.) Because Wyotex expressly agreed to pay the higher percentage with regard to the Stanley well, it could be inferred that Wyotex recognized the parties' contract at the higher percentages and ratified such a contract. At the same time, however, Wyotex disclaimed owing more than 5% of the costs associated with the Bauer Well. Further, Wyotex never paid anything on the bills. Therefore, Wyotex's responses to the billing statements do not indisputably establish consent, and reasonable jurors could disagree on the inferences to be drawn therefrom.

Accordingly, the Court finds that the issue of whether Wyotex is liable for costs over and above the amounts listed in the AFEs presents a question of fact for the jury. As such, neither Wyotex nor Continental are entitled to summary judgment as to the additional leasehold interests.

### B. Foreclosure on Lien and Liability for Attorney's Fees

Mont. Code Ann. § 82-11-212 provides that a well operator is entitled to a lien upon each owner's oil and gas rights in order to secure payment for services provided by the operator in connection with the well. The party asserting the lien

must file with the county clerk in which the land or leasehold is situated a verified affidavit setting forth: (a) the amount of the lien; (b) the dates on which the labor was performed, or the material or services were furnished; (c) the name of the owner of the leasehold; (d) the claimant and claimant's mailing address; and (e) a description of the leasehold. Mont. Code Ann. § 71-3-1004. The lien statement must be filed within 6 months after the date upon which the material or services were last furnished. *Id.* Mont. Code Ann. § 71-3-124 provides that in an action to foreclose the lien, "the court shall allow as costs the money paid and attorney fees incurred for filing and recording the lien and reasonable attorney fees in the district and supreme courts."

Here, Wyotex does not dispute that Continental's lien is valid, and it appears that Continental has complied with the requirements of §71-3-1004. Wyotex objects to the amount of the lien, however, asserting Continental should not be permitted to recover any amount in excess of the percentages expressed on the AFEs. As discussed above, Wyotex is liable for 5% of the costs of the Bauer Well and 0.141205% of the Stanley Well based on the percentages expressly listed in the AFEs. Whether Wyotex is liable for any additional costs presents a question of fact for the jury. Therefore, the final amount of Continental's lien is not settled at this time and thus, foreclosure on the lien is premature.

/ / /

Wyotex also argues Continental should not be permitted to recover attorney's fees and costs under §71-3-124 as an equitable matter. Wyotex asserts it has never objected to paying its share of expenses based on the percentages of participation listed in the AFEs, and therefore, Continental had no reason to resort to a lawsuit to recover those amounts. Wyotex asserts it was unreasonable for Continental to expend attorney's fees in order to foreclose the lien. Alternatively, Wyotex argues Continental should not be permitted to recover attorney's fees and costs related to the amounts billed in excess of the percentages listed in the AFEs.

The Montana Supreme Court has held that an attorney fee award under § 71-3-124 is mandatory. In *Vintage Constr., Inc. v. Feighner*, 394 P.3d 179, 188 (Mont. 2017), the court stated "[a] district court is not empowered with discretion to determine whether a party with an established lien is entitled to attorney's fees – the language of the statute is mandatory. A district court errs if it fails to award attorney's fees to a party with an established lien." Moreover, the Montana Supreme Court has repeatedly rejected the argument that the recovery of attorney's fees should be reduced in proportion to the amount recovered on a lien. *See e.g. Vintage Constr.*, 394 P.3d at 188 ("Section 71-3-124, MCA, does not require the award of attorney's fees to be reduced if the judgment is for an amount less than what was claimed in the lien."); *LHC, Inc. v. Alvarez*, 160 P.3d 502, 507 (Mont. 2007) (stating § 71-3-124 "does not require a proportional reduction in attorney

fees where judgment is for a lesser amount than was claimed in the lien"); *Donnes v. Orlando*, 720 P.2d 233, 237 (1986) ("In this case, [the plaintiff] established his lien. Section 71–3–124, MCA, mandates an award of attorney fees. The fact that [the plaintiff] did not receive the entire amount of his claim does not alter this result."). Continental is therefore entitled to recovery attorney's fees under § 71-3-124. The amount of attorney's fees will be determined after resolution of the remaining issues in the case.

Further, in light of the parties' dispute over Wyotex's liability for expenses associated with the wells, the Court does not find Continental unreasonably filed the lien or unreasonably sought to foreclose the lien. As such, even if the Court had discretion not to award attorney's fees under § 71-3-124, the Court finds no basis to deny Continental its statutory right to recover attorney's fees and costs in this case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Wyotex's Motion for Summary Judgment (Doc. 30) is **DENIED**;

2. Continental's Motion for Summary Judgment (Doc. 39) is **GRANTED in part and DENIED in part**.

**IT IS ORDERED**.

DATED this 14th day of February 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge